# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| **MOUSTAPHA MAGASSOUBA,** ) | |
| ) | |
| **Petitioner,** ) | |
| ) | |
| vs. ) | **Civil Action Number** |
| ) | **4:11-CV-4178-VEH-JEO** |
| **ERIC HOLDER,** *et al.*, ) | |
| ) | |
| **Respondents.** ) | |

## MEMORANDUM OPINION

Moustapha Magassouba, presently a detainee of the Bureau of Immigration and Enforcement ("ICE"), who is confined at the Etowah County Detention Center in Gadsden, Alabama, filed this *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.  (Doc. 1).  He is challenging his continued detention pursuant to 8 U.S.C. § 1231(a) and *Zadvydas v. Davis*, 533 U.S. 678 (2001).  Respondents have responded to the petition and moved to dismiss it as moot.  (Doc. 4).  For the reasons discussed below, the undersigned finds that the motion to dismiss is due to be granted, and, therefore, the petition is due to be dismissed without prejudice.

## FACTUAL BACKGROUND

Magassouba is a native and citizen of the Republic of Guinea.  (Doc. 4-1 at ¶ 2).  He entered the United States on or about June 17, 1990, as a non-immigrant

with authorization to remain in the United States until the expiration of his business visa, approximately 90-days. (*Id.*)

On March 19, 1996, Magassouba pleaded guilty to a charge of forgery in the third degree in the City Court of White Plains, New York. (Doc. 6 at 16). On August 13, 1996, that court sentenced him to three years probation and imposed a fine and a charge. (*Id.*) Approximately one month later, September 11, 1996, the city court issued a bench warrant for Magassouba due to his failure to pay the fine. (*Id.*) He was returned to the city court on the warrant on August 2, 2000, and resentenced to time served in lieu of the fine on August 7, 2000. (*Id.*)

On April 18, 2002, ICE served Magassouba with a Notice to Appear, charging him with removability from the United States under § 237(a)(1)(B) of the Immigration and Nationality Act because he had overstayed his visa. (Doc. 4-1 at 2 ¶ 4). He failed to comply with the notice and appear before an Immigration Judge. (Doc. 6 at 7).

More than seven years later, on November 24, 2009, Magassouba was convicted in the United States District Court for the Southern District of New York for conspiracy to distribute and possess at least 100 grams of heroin. (Doc. 4-1 at 3 ¶ 5). That court sentenced him to 74-months, time-served, and, three days later, November 27, 2009, ICE took Magassouba into custody and charged with

overstaying his visa. (Doc. 6 at 4-5). He has been continuously detained by ICE since that date. (*Id.*)

On May 27, 2011, an Immigration Judge in New York, New York, ordered Magassouba removed to the Republic of Guinea. (Doc. 4-1 at 3 ¶ 6). Magassouba timely appealed the removal to the Board of Immigration Appeals ("BIA"), and, on November 3, 2011, that court dismissed his appeal. (*Id.*) He then timely filed a petition for review with the United States Court of Appeals for the Second Circuit and moved to stay his removal. (*Id.*) Based on the information before the court, the petition and the motion for a stay of removal are currently pending before the Second Circuit.

## ANALYSIS

### A.     Improper Respondents

Respondents assert in a footnote that Magassouba has improperly named the Attorney General of the United States, the Secretary of the Department of Homeland Security, and the ICE Field Director for New Orleans as respondents. (Doc. 4 at 1 n.1). The law is well-established that the proper respondent in cases challenging physical custody is the petitioner's warden or immediate custodian. *See Rumsfeld v. Padilla*, 542 U.S. 426, 439 (2004). Because ICE has detained Magassouba at the Etowah County Detention Center pending his removal, the Warden of the Center, Scott Hassell, is the only proper defendant. Eric Holder, in

his official capacity as the Attorney General of the United States, Janet Napolitano, in her official capacity as the Secretary of Homeland Security, and Philip T. Miller, in his official capacity as the Field Office Director of ICE are due to be dismissed.

**B.     Detention**

As noted above, Magassouba asserts that his detention violates 8 U.S.C. § 1231(a) and *Zadvydas v. Davis*, 533 U.S. 678 (2001). (Doc. 6 at 7 ¶ 3). In *Zadvydas*, the Supreme Court addressed the government's authority under § 1231(a)(6) to detain two legal permanent residents beyond the 90-day removal period.[1] The Court held that the continued detention of legal permanent aliens beyond the 90-day removal period was permissible under the Constitution, but only for as long as was "reasonably necessary to bring about that alien's removal from the United States." *Id*. at 689. For the sake of uniform administration by the federal courts, the Supreme Court later held that "the presumptive period during which the detention of an alien is reasonably necessary to effectuate his removal is six months; after that, the alien is eligible for conditional release if he can demonstrate that there is 'no significant likelihood of removal in the reasonably

---

[1] Section 1231(a)(6) provides:

> An alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3).

foreseeable future.'" *Clark v. Martinez*, 543 U.S. 371 (2005) (quoting *Zadvydas*, 533 U.S. at 701).

In the present case, respondents contend that the instant petition is not ripe for review. Specifically, respondents contend that the six-month permissive removal period has neither begun nor expired, because Magaassouba's petition for review and motion for a stay of removal are pending before the Second Circuit. (Doc. 4 at 6-7). This contention is premised on § 1231(a)(1)(B)(ii) and a forebearance policy between the Second Circuit and the United States Attorney for the Southern District of New York.

Section 1231(a)(1)(B) provides that the removal period begins on the latest of the following:

(i) The date the order of removal becomes administratively final.

(ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.

(iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

The forbearance policy, as explained by respondents, is "an understanding between the Second Circuit and the government that when an individual files a petition for review ... in conjunction with a request for a stay of removal, the government will not remove the individual until the Second Circuit has affirmatively denied the request for stay." (Doc. 4 at 6). Invoking the forebearance policy with respect to §

5

1231(a)(1)(B)(ii), respondents argue that the filing of a stay motion in the Second Circuit effectively suspends the removal period.  Thus, respondents argue that the removal period cannot begin to run until the Second Circuit issues a ruling on Magassouba's petition for review of his removal order.  (*Id*. at 3).

Numerous decisions have acknowledged the Second Circuit's forebearance policy.  In *Abimbola v. Ridge*, 181 Fed. App'x 97 (2d Cir. 2006), the Second Circuit treated the forbearance policy as a formal stay of removal, reasoning that "a self-inflicted wound should not establish grounds for [a] *Zadvydas* claim." 181 Fed. App'x at 99 (referring to an alien's repeated motions for stay of removal which triggered the forbearance policy).  Additionally, in *Luna-Aponte v. Holder*, 743 F. Supp. 2d 189, 197 (W.D.N.Y. 2010), the district court for the Western District of New York found that "although Petitioner does not meet the precise definition of 8 U.S.C. § 1231(a)(1)(B)(ii) ... for purposes of this action, the forbearance policy is the equivalent of a court-ordered stay of removal ... and his removal period has not yet begun."

This court contacted the Second Circuit and obtained a copy of the forbearance policy, which is entitled "Memorandum for Chambers and Staff, Subj: Motions for Stay of INS Deportation Orders." (Doc. 7).  The memorandum states that "[t]he United States Attorney for the Southern District of New York ... has agreed to instruct INS not to deport or return an alien who has filed a motion for

stay of deportation with the Court until and unless that motion is denied." (*Id.*) Further, the memorandum specifies that "the SDNY U.S. Attorney's new policy, as applied to stay motions in habeas cases, only covers such motions arising in the SDNY." (*Id.*)

Notably, the district court for the Middle District of Pennsylvania has declined to construe the forebearance policy as effectuating a suspension of the removal period pursuant to § 1231(a)(1)(B)(ii) due to the lack of formal court orders staying removal proceedings. In *Oller Sanchez v. Decker*, that court found that "Congress has decreed that the removal period will be suspended only if 'the removal order is judicially reviewed *and* if a court orders a stay of the removal of the alien....'" No. 06-1158, 2006 WL 3325671, *3 (M.D. Pa. Oct. 24, 2006) (emphasis in original) (quoting 8 U.S.C. § 1231(a)(1)(B)(ii)). Focusing on the statutory language of § 1231(a)(1)(B)(ii) requiring a court order staying the removal, the *Oller Sanchez* court further noted that it had "previously held that an informal understanding between a court and government counsel cannot substitute for an order of court." 2006 WL 3325671, at *3 (citing *Oyedeji v. Ashcroft*, Civil Action No. 02-2032, slip op. at 8 (M.D. Pa. Dec. 30, 2003) (Vanaskie, C.J.)). Then, expanding on *Oyedeji*, the court reasoned that "[a] stay of executive action must be dependant upon a determination that the criteria warranting such extraordinary equitable relief are satisfied" and that "blanket informal

7

understandings between a court and a government attorney cannot substitute for the individualized determination of whether extraordinary equitable relief is warranted in a particular case." *Id*.

This court finds the reasoning in *Oller Sanchez* persuasive and declines to recognize that the Second Circuit's forebearance policy has effectively suspended Magassouba's removal period. As discussed by the district court for the Middle District of Pennsylvania, the plain language of § 1231(a)(1)(B)(ii) requires a court order staying the removal proceedings, and this court declines to construe the forebearance policy as effectuating a court order. Thus, when a detainee has filed a petition for review of an order of removal, but has not received a court order staying his removal proceedings, he is subject to the provisions of § 1231(a)(1)(B)(i), which state that the removal period begins on the "date the order of removal becomes administratively final."

Having determined that the removal period is not stayed by the forebearance policy, the court must next determine whether Magassouba's detention is unreasonable under *Zadvydas*. Pursuant to § 1231(a)(1)(B)(i), Magassouba's removal period began on November 3, 2011, when the BIA dismissed his appeal and his order of removal became administratively final. Thus, the six-month permissive detention period will expire on May 3, 2012. Until then, Magassouba's

petition is premature under *Zadvydas* and *Clark* and, therefore, due to be dismissed without prejudice.

## CONCLUSION

For the foregoing reasons, the motion to dismiss (doc. 4) is due to granted and Magassouba's petition is due to be dismissed without prejudice.

**DONE** this the 4th day of April, 2012.

**VIRGINIA EMERSON HOPKINS**
United States District Judge